In this cause, pursuant to decree of this court (affirmed,96 N.J. Eq. 702), the defendants were directed to account to the complainant for profits accruing from the illegal use of certain confidential information obtained by the individual defendants while in the employ of the complainant. The matter was referred to a master and by consent of counsel he selected a firm of accountants to examine the books of the defendant company and report thereon, such report to be accepted as a correct statement of what the books showed, the right being reserved by both sides to cross-examine the accountants, to produce other testimony and to object to the allocation of the various items of the account. These accountants filed their report indicating a profit on "Type M *Page 242 
grating" (which is the subject of this controversy) amounting to $35,128.88, designated as "net income in suspense." From this amount the master deducted certain items amounting to $6,009.55, fixing the profits at $29,119.33, for which amount the defendants were to account to the complainant. Exceptions have been filed by either complainant or defendants to every item in the master's report, so that for all practical purposes the matter is now before the court as though no reference and report had been made. The amounts represented by such of the complainant's exceptions as are sustained should be added to the total profits found by the master, and the amounts represented by such of the defendants' exceptions as are sustained should be deducted from those profits.
The complainant's exceptions are as follows:
1 and 2. Amount allowed defendant by master for account of organization expenses, $1,608.67.
3 and 4. Amount allowed defendant by master for agents' equipment, $2,132.53.
5 and 6. Amount allowed defendant by master on account of agents' advances, $2,268.35.
(The above amounts were included by the firm of accountants in the statement of "net income in suspense," but deducted therefrom by the master.)
7 and 8. Allowance for depreciation on machinery, $1,587.26.
9 and 10. Allowance for depreciation on furniture and equipment, $104.26.
11 and 12. Allowance for maintenance and repairs, $2,230.30.
13 and 14. Allowance for fire insurance premiums, $210.50.
15 and 16. Allowance for advertising, $5,170.04.
17 and 18. Allowance for taxes, $664.87.
(These items represent amounts deducted from income by the accountants before setting up the net income in suspense.)
The defendants' exceptions are as follows:
1. Failure of master to allow a deduction from profits for *Page 243 
obsolescence and depreciation in addition to amount set up by accountants.
2. The finding of the master that the amount of depreciation set up by accountants included apparatus and machinery discarded on account of obsolescence.
3. The failure of the master to allow a deduction of $8,035.66 for organization expenses.
4. The failure of the master to allow an additional deduction of $1,334.12 on account of agents' equipment.
5. The refusal of the master to allow a credit of $15,441.17 for depreciation on patents.
6. The refusal of the master to allow a credit of $1,720.95 for general patent expenses.
7. The refusal of the master to allow $16,073.09 for expenses of this litigation.
8. The refusal of the master to allow $12,527.40 for expenses of litigation in United States courts.
9. The refusal of the master to allow a credit of $1,097.40 expenses of litigation in New York.
10. The refusal of the master to allow a credit of $792 as expenses of officials of the corporate defendant.
11. Refusal to allow a credit of $232.02 expenses for Canadian patents.
12. Relates to items of $1,587.26 and $104.26 covered by complainant's exceptions and which I understand were deducted by the accountants before setting up the "net income in suspense."
13. Relates to the allowance of net profits as found by the master, defendants claiming that no profits should have been found.
I will consider these various exceptions in the order stated: but this inquiry should be approached with the thought in mind that all doubts should be resolved against a fraud-doer. The court of errors and appeals has found that the defendants "filched" the secret information which resulted in the patents on "Type M grating." The Standard Dictionary definition of "filch" is "to steal, especially slyly." The acts of the defendant which have been condemned were not innocent. *Page 244 
The defendants had notice of the complainant's rights from the very inception of their nefarious plan and should be held accountable for all profits on the "Type M grating" from the very beginning. Vulcan Detinning Co. v. American Can Co., 75 N.J. Eq. 542.
It follows that none of the defendants' expenditures which were made in strict furtherance of their fraudulent conspiracy should be allowed as a deduction from the income, and that the only deductions which should be allowed are disbursements representing the actual cost of manufacture and sale of "Type M grating;" that is, labor, material and expenses ordinarily incident to such manufacture and sale, but not strict capital expenditures. In the case above referred to defendants were held accountable for profits accruing after suit brought and were allowed a deduction from income for many items of expense incurred prior to the institution of suit. That was because the defendant company had not been organized for the sole purpose of carrying out an illegal conspiracy, and it appeared that the only official of the defendant company who had knowledge of the complainant's rights was the president, and it was held that his knowledge would not be imputed to the defendant corporation. But here the defendants Bunker and Lown "filched" from the complainant secret processes and information for the specific purpose of utilizing which the defendant corporation was organized and of which corporation these individuals were the main factors. The corporation itself, therefore, acted with guilty knowledge from the very beginning, and under such circumstances should be held accountable for all profits not only from the date of the commencement of the suit but from the very beginning of its corporate existence.
 COMPLAINANT'S EXCEPTIONS. 1 and 2 Organization Expenses.
The total amount expended for organization expenses as shown on the books was $8,035.66, and of this amount the master allowed $1,608.67 as a deduction from profits on the *Page 245 
theory that the organization expenses should be amortized over a period of years. This would ordinarily be entirely proper, but where a corporation has been organized for a specific illegal purpose (to carry out an illegal conspiracy to ruin another's business, as here), none of the expenses incident thereto should be allowed as a deduction from the income in determining profits illegally made. In the present instance all of the organization charges were incurred in forwarding the conspiracy against the complainant, and if these expenses were allowed it would be, in effect, compelling the complainant to pay for its own undoing, and this thought is emphasized by the fact that included in this expense is a total of $4,850 for officers' salaries, all of which was paid to the defendants Bunker and Lown, who were the originators of the conspiracy which has been condemned. Aside from that the corporate organization still exists and is functioning for other than fraudulent purposes. Complainant's exceptions 1 and 2 will, therefore, be sustained.
 3 and 4 Agents' Equipment.
According to the defendant corporation's books there was an expenditure of $4,098.71 for agents' equipment. A depreciation of $1,966.18 was set up in the books and allowed by the accountants and the item of agents' equipment was shown as an asset to the amount of $2,132.53. The master allowed a deduction of all of this item from income on the theory that the agents' equipment, consisting mainly of samples of grating, was of no particular value to the defendant company and the disbursement therefor was more in the nature of a sales expense. An attempt was made by the defendants to show that all of this equipment had disappeared and that, therefore, allowance for the whole amount should be made. I do not agree with the master, however, on this point, as I do not consider the testimony of the defendants to the effect that the agents' equipment had all been used up sufficient to offset the statement on the books to the contrary; *Page 246 
which statement was evidently set up on the books without this point being in mind, and should, therefore, be taken most strongly against the defendants. I agree with the master that such part of the agents' equipment as has been used by the defendants in making the sales of "Type M grating" should be allowed for as a sales expense, but I am not convinced that any greater allowance should be made than the depreciation allowed by the accountants. The testimony on this point is unconvincing and whatever doubt exists should be resolved against the defendants. In addition to the foregoing it is worthy of note that a large portion of the expense for agents' equipment was incurred long after the institution of this suit. Exceptions 3 and 4 will, therefore, be sustained.
 5 and 6 Advances to Agents.
This item represents advance payments to agents of unearned commissions on prospective sales. They were in the nature of loans by the defendant company to the agents and in some intances written obligations were given by the agents to the defendant for the amount of such advances. It does not appear that any attempt has ever been made to collect on these obligations, or that they are uncollectible; but aside from that fact, under the circumstances of this case, these advances should not be considered as proper sales expenses. The agents to whom these payments were made were formerly employes of the complainant, induced to leave their employment by the defendants in furtherance of the unlawful conspiracy and were practically, if not actually, co-conspirators of the defendants Bunker and Lown, and the advance payments might well be said to be the price of their perfidy. Exceptions 5 and 6 will be sustained.
 7 and 8 Reserve for Depreciation of Machinery and Equipment.
All the machinery and equipment, valued on the books at $8,164.84, was acquired after the filing of the bill in this *Page 247 
cause. The cost of this machinery and equipment represents capital disbursements and capital investments in furtherance of an illegal purpose. No depreciation whatever should be allowed on this item. This machinery and equipment is still the property of defendant company. If it is depreciated in value it is because of its illegal use by the defendants, and in view of the cost of maintenance and repairs, to be considered under another exception, the manufacturing cost incident to the use of such machinery and equipment is adequately provided for without any allowance for depreciation. These exceptions will be sustained.
 9 and 10 Depreciation on Furniture and Equipment.
What has already been said with respect to reserve for depreciation on machinery and equipment applies with equal force to these exceptions and they will, therefore, be sustained.
 11 and 12 Maintenance and Repair.
This item represents the cost of maintaining and repairing the machinery and equipment used in the manufacture of "Type M grating," and in my judgment is a proper manufacturing cost item, and should be allowed as a deduction from income. The machinery had to be kept in repair or the grating could not have been manufactured. Exceptions 10 and 11 will, therefore, be overruled.
 13 and 14 Fire Insurance.
It does not appear just what this item covers, but I think it may safely be assumed that it represents part of the general business expenses of the defendant corporation and was not particularly related to the manufacturing cost of the "Type M grating," and no deduction, therefore, should be allowed. These exceptions will, therefore, be sustained. *Page 248 
 15 and 16 Advertising.
This item represents a proper sales expense and should be allowed as a deduction from income. It does not appear that any sales would have been made without such expense and if no sales had been made there would have been no profits. Exceptions 15 and 16 are, therefore, overruled.
 17 and 18 Taxes.
What has been said with respect to the item of insurance under exceptions 13 and 14 applies equally to this item of taxes and there is nothing to indicate that the property against which the taxes were levied is not still owned by the defendant corporation. Exceptions 17 and 18 will, therefore, be sustained.
 DEFENDANTS' EXCEPTIONS. 1 Obsolescence.
This exception is based upon a claim for an allowance of $1,000 on account of cost of machinery purchased by the defendant corporation but which machinery was never used in connection with any of its manufacturing. The machinery cost $3,400, and defendants claim that in addition $1,200 was spent upon it after its purchase, but that it was never used because it proved unsuitable for the purpose for which purchased. This expenditure evidently represents an unfortunate investment, not required, and not made use of by the defendants in their illegal operations. It did not represent part of the manufacturing cost. Aside from this, however, the accountants testified that the depreciation allowed on other items of equipment was sufficient to cover this item of obsolescence. Even if, therefore, the item were a proper *Page 249 
one for consideration, it has already been disposed of in passing upon the exceptions relating to depreciation. Ample authority, if any were needed, for overruling this exception is found inCrosby Steam Gage and Valve Co. v. Consolidated Safety ValveCo., 141 U.S. 441, and Callaghan v. Myers, 128 U.S. 617.
Defendants' exception number 1 will be overruled.
 2
It is unnecessary to further pass upon this exception as it is disposed of by the overruling of defendants' first exception, and this exception will also be overruled.
 3 Organization Expenses.
This exception will be overruled for the reasons given in sustaining complainant's first and second exceptions.
 4 Agents' Equipment.
This exception will be overruled for the reasons given in sustaining complainant's third and fourth exceptions.
 5 Amortization of Patents.
No amortization of patents should be allowed because the defendants never owned any patents for which they paid anything except those on processes "filched" from the complainant. This is a claim, therefore, for amortization on property which our highest court has found belongs to complainants. A very ingenious argument is advanced by defendants for amortization on patents turned over to the defendant company by the defendant Bunker, and on which the defendants themselves placed a value of $75,000 for the purpose of computing amortization. According to the records of the defendant company three thousand shares of non-par value *Page 250 
stock were issued to the defendant Lown for patents on stolen processes and any future patents which he might obtain. This stock was arbitrarily valued at $50 per share, and a value of $150,000, therefore, placed upon all patents owned by the company. The only patents which the company had other than those assigned to it by the defendant Lown was a patent subsequently obtained by the defendant Bunker, and it is argued that inasmuch as Lown and Bunker were in cahoots in this nefarious scheme Bunker was entitled to one-half of the consideration moving to Lown from the company for the patents which he attempted to sell, and by this circuitous route the defendants arrive at a value of $75,000 for the patent turned over to the defendant company by Bunker; but I am unable to follow this intricate path, as the records are conclusive that whatever stock was issued to Lown was in payment for what he was supposed to have sold to the company, and it does not appear that anything was ever paid or agreed to be paid to Bunker for his patent. Exception number 5 will, therefore, be overruled.
 6 General Patent Expenses.
As the basis of the defendant company's patents were processes filched from the complainant, what has been said with respect to amortization of patents applies equally to this item and this exception will, therefore, be overruled.
 7, 8, 9 and 10
These four exceptions may be disposed of together. Number 7 applies to the expenses of the present litigation; number 8 applies to the expenses of litigation in the United States courts in an effort to maintain the defendants' alleged rights to the property "filched" from complainant; number 9 relates to legal expenses in connection with a criminal action in New York against the defendants Bunker and Lown, and *Page 251 
number 10 comprises expenses of officers of the corporation defendant in connection with this litigation.
The fallacy of the argument in support of exception number 7 is indicated when we consider that included in this item of expense is a counsel fee of $5,500 which this court ordered the defendants to pay to the complainant's counsel. To allow this exception would be to compel the complainant to pay what the court has said the defendants should pay. No argument ought to be necessary to show that the defendant ought not to be charged with the expenses of resisting its lawful claim. An allowance of the items comprising these four exceptions would practically eliminate all profits for which the defendants have been directed to account and the sustaining of these exceptions would be, in effect, compelling the complainant to pay for litigation in support of an unlawful conspiracy against it. With respect to exception number 8, this was a criminal action in New York with which the defendant company had no connection whatever, and it is now conceded by defendant that this exception cannot be sustained. Exception number 10 is in the same class as numbers 7 and 8. These four exceptions will, therefore, be overruled.
 11 Expense of Canadian Patents.
It seems to me that this item is on a par with the European license referred to in the Vulcan Detinning Company Case, the expense of which was not allowed as a deduction from the income. This exception will, therefore, be overruled.
 12 and 13
These two exceptions are disposed of by what has already been said and they will be overruled.
The result is, therefore, that to the profits of $29,119.33 found by the master, should be added the following amounts: *Page 252 
Organization expenses ...................................... $1,608.67
Agents' equipment .......................................... 2,132.53
Agents' advances ........................................... 2,268.35
Reserve for depreciation on machinery, c. ................. 1,587.26
Reserve for depreciation on furniture and equipment ........ 104.26
Fire insurance ............................................. 210.00
Taxes ...................................................... 664.00
 _________
 $8,575.07

This sum, added to the amount of the profit found by the master, makes a total of $37,694.40 profits for which the defendants must account to the complainants.
I will advise a decree in accordance with these conclusions.